**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
WILLIAM BRODY,                                          :
                                                        :
                                        **Plaintiff,**  :
                                                        :      **00 Civ. 7481 (HB)**
                        - against -                     :
                                                        :
                                                        :      <u>**OPINION AND**</u>
                                                        :      <u>**ORDER**</u>
**VILLAGE OF PORT CHESTER,** *et. al.*,                 :
                                                        :
                                        **Defendants.** :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

      Plaintiff William Brody ("Plaintiff" or "Brody"), in this long-running litigation to challenge the taking of his property, brings, pursuant to his Amended Complaint of August 28, 2006, constitutional claims against Defendants Village of Port Chester (the "Village"), G&S Port Chester LLC ("G&S"), Village of Port Chester Industrial Development Agency ("Village IDA"), and Hudson United Bank Co. ("Hudson") (collectively, "Defendants").  Brody alleges, pursuant to 42 U.S.C. § 1983, violations of procedural due process and equal protection by Defendants relating to the condemnation of his property by the Village under N.Y. E.D.P.L. § 201 *et. seq.*

      Defendants now move for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), on the grounds that 1) the Court lacks subject matter jurisdiction over this entire action under *Rooker-Feldman* doctrine; 2) Plaintiff's claims for damages and revestment of title are barred by *res judicata* or collateral estoppel; 3) certain of Plaintiff's procedural due process claims are barred by *res judicata* or law of the case doctrine; and 4) Plaintiff's equal protection claim fails on its merits.[1]

---

[1] Defendants have also submitted a motion *in limine* to exclude at trial evidence that was not before the Village at the time it issued its Determination and Findings – e.g., information that the Village might have produced to Brody pursuant to a FOIA request that Brody could have used to pursue a timely constitutional challenge to the taking in state court, had Brody received notice.  Brody seeks to introduce this evidence to the extent that it relates to his theory of damages resulting from the due process violation – namely, that had he received notice, the outcome of the proceedings relating to his property would have been different, and that he is entitled to resultant equitable damages based on that difference.

On January 23, 2007, I ordered trial of this matter to be bifurcated into two phases – 1) a determination of whether Brody received "actual notice," pursuant to the Second Circuit's remand to this Court, see <u>Brody</u>

For the reasons articulated below, Defendants' motion is denied in part and granted in part.

## I.      BACKGROUND

Familiarity is assumed with facts and prior opinions in this litigation.[2]  A brief recounting of the facts germane to this motion follows.

A.   The Village's Condemnation of Brody's Property

In 1996, Plaintiff William Brody purchased commercial property in an area of the Village of Port Chester that had long been slated for redevelopment.  See Brody v. Village of Port Chester, 434 F.3d 121, 124 (2d Cir. 2005) ("Brody III").  On May 22, 1999, the Village published notice in the local newspaper, the *Journal News*, of a series of concurrent public hearings on the redevelopment project.  See Brody's Memorandum of Law in Opposition to Defendants' Motion for Judgment on the Pleadings ("Pl. Opp."), at 1.  The Village also sent personal notice to Brody by certified mail, although Brody claims that he never saw it.  Brody III at 124.  Defendants state that the notice (had Brody received it) stated the time, place, and subject matter of the hearings, and cited applicable portions of the New York Eminent Domain Procedure Law ("E.D.P.L.").  Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings ("Def. Mot."), at 4.  Brody avers that the hearing notice "did not indicate that the hearing had any significance for challenging the possible future condemnation of Brody's property, nor did it indicate that the hearing was… related to the opportunity to challenge condemnations judicially."  Pl. Opp. at 2.

On June 7, 1999, the Village held a public hearing to discuss the public use, local impact, and necessity of the redevelopment project, as required by N.Y. E.D.P.L. § 201.

---

v. Port Chester, 434 F.3d 121, 123 (2d Cir. 2005); and 2) a determination of Brody's resultant damages, if any.  Trial of the determination of whether Brody received "actual notice" is set for March 19, 2007.

Accordingly, because Defendants' motion *in limine* is relevant to the damages inquiry, not the "actual notice" inquiry, I decline to rule on Defendants' motion *in limine* at this time.  I will hold Defendants' motion *in limine sub judice* until after the trial on "actual notice" is complete.

[2] See (in chronological order) Minnich v. Gargano, 2001 U.S. Dist. LEXIS 372 (S.D.N.Y. Jan. 18, 2001); Brody v. Village of Port Chester, 261 F.3d 288 (2d Cir. Aug. 8, 2001) ("Brody I"); Minnich v. Gargano, 2001 U.S. Dist. LEXIS 14760 (S.D.N.Y. Sept. 20, 2001); Brody v. Village of Port Chester, 345 F.3d 103 (2d Cir. Sept. 24, 2003) ("Brody II"); Brody v. Village of Port Chester, 2005 U.S. Dist. LEXIS 13 (S.D.N.Y. Jan. 4, 2005); Brody v. Village of Port Chester,, 434 F.3d 121 (2d Cir. Dec. 5, 2005) ("Brody III").

See Brody III, 434 F.3d at 124.  Brody attended and commented publicly.  See Brody v. Village of Port Chester, 345 F.3d 103, 106 (2d Cir. 2003) ("Brody II").  Brody contends that at this first hearing, "attendees were told that no final decisions on condemnation would be made in the near future," that property owners "need not take any action," and that he was given "no indication that this hearing would deprive him of any rights."  Pl. Opp. at 2.

Shortly after this first hearing, the Village published notice of a second public use hearing, to be held on July 6, 1999.  Brody II, 345 F.3d at 106.[3]  Brody claims to have received no actual notice of this second hearing.  It is undisputed he did not attend.  Id., see also Pl. Opp. at 2.  Brody's comments at the first public hearing were incorporated into the record of this July 6, 1999 hearing.  Brody III, 434 F.3d at 125.

On July 18 and 19, 1999, the Village published a synopsis of its Determination and Findings regarding the redevelopment project.  Brody III, 434 F.3d at 125.  This publication commences the exclusive thirty-day period under which an affected property owner may seek judicial review of the Village's determination of, inter alia, the constitutionality of public use.  Id., citing N.Y. E.D.P.L. §§ 204, 207(A).[4]  Brody avers that the synopsis did not mention that he had 30 days from the date of its publication to challenge condemnation.  Pl. Opp. at 2.

---

[3] Brody contends that the hearing was not actually held at the location listed in the notice.  See Pl. Opp. at 2.

[4] N.Y. E.D.P.L. § 207 provides in relevant part:

" (A) Any person or persons jointly or severally, aggrieved by the condemnor's determination and findings made pursuant to section two hundred four of this article, may seek judicial review thereof by the appellate division of the supreme court, in the judicial department embracing the county wherein the proposed facility is located by the filing of a petition in such court within thirty days after the condemnor's completion of its publication of its determination and findings pursuant to section two hundred four herein….

(B) The jurisdiction of the appellate division of the supreme court shall be exclusive and its judgment and order shall be final subject to review by the court of appeals in the same manner and form and with the same effect as provided for appeals in a special proceeding….

(C) The court shall either confirm or reject the condemnor's determination and findings. The scope of review shall be limited to whether:

(1) the proceeding was in conformity with the federal and state constitutions,

(2) the proposed acquisition is within the condemnor's statutory jurisdiction or authority,

(3) the condemnor's determination and findings were made in accordance with procedures set forth in this article and with article eight of the environmental conservation law, and

(4) a public use, benefit or purpose will be served by the proposed acquisition."

In any event, Brody claims that he never saw this published synopsis of the Village's Determination and Findings. Brody did not file for judicial review of the condemnation within the 30-day period and thus lost his opportunity for a judicial determination challenging the condemnation on constitutional or statutory grounds. Brody III, 434 F.3d at 125; Pl. Opp. at 2.

B.  Brody's State Court Action

On April 25, 2000, the Village filed a petition in state court pursuant to N.Y. E.D.P.L. § 402 to acquire title to the redevelopment project area, which included Brody's property. Brody III, 434 F.3d at 125. On May 17, 2000, Brody challenged the petition and interposed several affirmative defenses. The defenses related exclusively to compensation, as Brody's counsel correctly informed him that arguments against the constitutionality of public use were barred by N.Y. E.D.P.L. § 208. Id. On November 8, 2000, New York state Supreme Court granted the Village's petition to acquire title, on the condition that the Village make Brody an offer for compensation within sixty days as required by Article 3 of the EDPL. See In the Matter of the Village of Port Chester, No. 006448/00 (N.Y. Sup. Ct. Nov. 8, 2000) (Palella, J.), attached to Declaration of Brian Belowich ("Belowich Decl."), Dec. 11, 2006, Ex. A. Brody did not appeal this Order.

In May 2002, Brody and the Village entered into an agreement under Article 3 of the EDPL pursuant to which Brody received an advance payment of $1.8 million as compensation for the taking of his property. Brody II at 107. On July 11, 2002, Brody filed a claim for damages against the Village in state court, seeking $5 million plus interest for the fair market value of the property. Id. On January 24, 2006, New York state Supreme Court awarded Brody $2.57 million (less the $1.8 million already paid to him) as just compensation for the taking of his property, pursuant to Article 5 of the EDPL. See In the Matter of the Village of Port Chester, No. 006448/00 (N.Y. Sup. Ct. Jan. 26, 2006) (Rosato, J.). Brody has appealed that order. His appeal remains pending. See Def. Mot. at 3.

C.  Brody's Federal Court Action

1.  "*Brody I*"

Meanwhile, on October 4, 2000, Brody commenced this lawsuit in federal court. Among other things, Brody alleged that due process required the Village to provide him

with personal notice of the public use hearings and of the Village's Determinations and Findings. <u>Brody v. Village of Port Chester</u>, 261 F.3d 288, 289-90 (2d Cir. 2001) ("<u>Brody I</u>"). This Court preliminarily enjoined the Village from proceeding further with the condemnation of Brody's property. <u>Minnich v. Gargano</u>, 2001 U.S. Dist. LEXIS 372 (S.D.N.Y. 2001). The Second Circuit vacated the preliminary injunction and remanded to this Court. <u>Brody I</u>, 261 F.3d at 291. In doing so, the Second Circuit found that Brody received actual notice of the first hearing on June 7, 1999, and thus lacked standing to pursue his due process claim for lack of notice of that hearing, owing to the lack of any injury in fact. <u>Brody I</u> at 290.

   2. "*Brody II*"

   This Court subsequently granted summary judgment to Defendants on Brody's remaining claims, holding that the state court action barred them as *res judicata*. <u>Minnich v. Gargano</u>, 2001 U.S. Dist. LEXIS 14760, at *21-23 (S.D.N.Y. 2001).

   The Second Circuit vacated this Court's grant of summary judgment and again remanded to this Court. <u>Brody II</u>, 345 F.3d 103. The Second Circuit did not disturb its finding of Brody's lack of standing to challenge his lack of notice of the first hearing. The Second Circuit found that Brody also lacked standing to challenge his lack of notice of the second hearing on July 6, 1999. <u>Brody II</u>, 345 F.3d at 111. The Second Circuit did, however, find that Brody possessed standing to challenge his lack of notice of the Determination and Findings and legal consequences stemming from their publication. <u>Id.</u> at 111-12. The Second Circuit held that the state court action did not bar Brody's due process claims as *res judicata*. <u>See</u> <u>Brody II</u> at 113-16.

   3. "*Brody III*"

   This Court subsequently granted summary judgment to Defendants on Brody's remaining due process claims on their merits. <u>Brody v. Village of Port Chester</u>, 2005 U.S. Dist. LEXIS 13 (S.D.N.Y. 2005). Brody did not further pursue his challenge to his alleged lack of notice of the public hearings; at this point, Brody only challenged the

notice of the Determination and Findings.  Brody v. Village of Port Chester, 2005 U.S. Dist. LEXIS 13, at *10.[5]

The Second Circuit once again vacated this Court's grant of summary judgment and remanded to this Court.  Brody III, 434 F.3d 121.  Regarding the means of the notice due Brody, the Second Circuit held that a condemnor (such as the Village here) must provide personal notice (such as by mail) of the exclusive period in which condemnees (such as Brody) could challenge public use.  Brody III, 434 F.3d 121, 129.  Regarding the content of the notice due Brody, the Second Circuit held that the notice "must make some conspicuous mention of the commencement of the thirty-day review period."  Brody III at 130.  However, the Second Circuit reiterated that "beyond that, property owners are generally charged with knowledge of the laws relating to property ownership," see id. at 132, citing North Laramie Land Co. v. Hoffman, 268 U.S. 276, 283 (1925), and that the notice did not have to inform condemnees such as Brody of the procedures available for challenging the condemnation.  Brody III at 132, citing City of West Covina v. Perkins, 525 U.S. 234, 241 (1999).[6]  The Second Circuit accordingly remanded to this Court for a determination of whether Brody had "actual notice" of the Determination and Findings and "to what damages, if any, he is entitled."  Brody III at 124.[7]

### 4.  *Brody's Instant Claims*

On August 30, 2006, Brody filed an Amended Complaint in this Court.  Brody re-alleges his due process claim.  See First Amended Complaint, August 30, 2006 ("Am. Compl.") at ¶¶ 68-75.  Brody alleges additional facts designed, it appears, to remedy his lack of standing to challenge the constitutional sufficiency of his notice of the two public hearings.  See Am. Compl. ¶¶ 39-41.

---

[5] Additionally, at this point, Brody only pursued his as-applied challenges.  Brody dropped his facial due process challenges to the regulations, as New York amended its EDPL regulations in 2004.  See Brody v. Village of Port Chester, 2005 U.S. Dist. LEXIS 13, at *7-8.

[6] The Second Circuit also held that the EDPL procedures for reviewing a condemnor's determinations satisfied due process.  Brody III at 132-36.

[7] The Second Circuit cast its remand in broader terms.  See Brody III at 124 ("[we] remand for a trial to decide whether Brody had actual notice of the EDPL proceedings or procedures and to what damages, if any, he is entitled.")  However, it is clear from a full reading of the Second Circuit's opinion that Brody, at the time of the Second Circuit's opinion, was only pursuing his notice claim regarding the Determination and Findings.  See, e.g., Brody III at 128 ("Brody does not now challenge the notice of the public hearing; rather, he challenges the notice by publication of the Determination and Findings and, consequently, of the commencement of the thirty-day challenge period.")

Additionally, Brody has now added an equal protection claim.  Brody alleges that the Village has "treated similarly situated persons differently" by "affording substantially less due process protection to owners whose property is taken pursuant to the EDPL than is afforded to proprietors of liberty and property interests in other contexts… such as forfeiture."  Am. Compl. ¶ 77.

Defendants now move, pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings, in whole and in part.  They argue as a threshold matter that the Court lacks subject matter jurisdiction over this entire action under *Rooker-Feldman* doctrine.  If subject matter jurisdiction exists, Defendants argue nevertheless that 1) Plaintiff's claims for damages and revestment of title are barred by *res judicata* or collateral estoppel; 2) Plaintiff's procedural due process claims challenging his lack of notice of the public hearings are barred by *res judicata* or law of the case doctrine; and 3) Plaintiff has failed to state an equal protection claim on its merits.

## II.     STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 12(c), judgment on the pleadings is appropriate where material facts are undisputed and the moving party is entitled to judgment as a matter of law.  See, e.g., Quinones v. Chater, 1996 U.S. Dist. LEXIS 980, at *3 (S.D.N.Y. 1996) (Baer, J.); United States v. Weisz, 914 F. Supp. 1050, 1053 (S.D.N.Y. 1996).  "The same standards apply to a Rule 12(c) motion for judgment on the pleadings and to a Rule 12(b)(6) motion to dismiss for failure to state a claim."  Cowan v. Ernest Codelia, P.C., 149 F. Supp. 2d 67, 69 (S.D.N.Y. 2001), citing Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999).  "The court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-movant.   The court should not dismiss the complaint unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief."  Quinones v. Chater, 1996 U.S. Dist. LEXIS 980, at *3 (internal citations omitted), citing, e.g., Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).

In deciding a Rule 12(c) motion, the Court may also consider written instruments attached as exhibits to the complaint, documents that are incorporated by reference or heavily relied upon in the complaint, or matters of which judicial notice may be taken, such as public documents.  See World Book, Inc. v. IBM Corp., 354 F. Supp.

2d 451, 453 (S.D.N.Y. 2005), citing Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); Cowan v. Ernest Codelia, P.C., 149 F. Supp. 2d 67, 69.

## III.   DISCUSSION

### A.  *Rooker-Feldman* Doctrine

Under *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments."  Ponterio v. Kaye, 2007 U.S. Dist. LEXIS 4105, at *16 (S.D.N.Y. 2007), citing Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005) ("Hoblock"); Rooker v. Fidelity Trust Co., 263 U.S. 413, 414-15 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).  *Rooker-Feldman* doctrine is "confined to ... cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Hoblock, 422 F.3d 77, 85,  quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) ("Exxon Mobil").

Here, the question of whether Brody's lawsuit is barred by *Rooker-Feldman* turns on whether he complains of an "injury caused by a state court judgment."[8]  "The Second Circuit, in Hoblock, recently distinguished between state court judgments that 'cause' the injury plaintiff complains of, as opposed to state judgments that merely 'ratify,' 'acquiesce in,' or 'leave unpunished' the actions of a third party."[9]  Ponterio v. Kaye, 2007 U.S. Dist. LEXIS 4105, at *17-18, citing Hoblock, 422 F.3d 77, 87-88.

Brody's due process claim, at heart, complains of the alleged lack of notice provided to him by the Village when the Village initiated condemnation proceedings against him.  Although the Village's condemnation was ratified by the state courts in the

---

[8] Brody also notes that because his appeal of the state court "just compensation" award is still pending, the state-court judgment at issue may not qualify as "rendered before the district court proceedings commenced."  See Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R., 410 F.3d 17, 24 (1st Cir. 2005).  "If federal litigation is initiated before state proceedings have ended, then -- even if the federal plaintiff expects to lose in state court and hopes to win in federal court -- the litigation is parallel, and the *Rooker-Feldman* doctrine does not deprive the court of jurisdiction."  Id., citing Exxon Mobil, 544 U.S. 280.  Ultimately, because Brody's injury is not caused by the state-court judgment, I believe it is unnecessary to reach the issue.

[9] "[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it."  Hoblock at 88.

EDPL proceedings, the Village, as the initiator of the notice, is the initiator of Brody's injury, not the state court judgment. It cannot be said that Brody's complained-of injury is the state court judgment itself, in the same way that, for example, a federal plaintiff seeking to collaterally attack a family court custody order on constitutional grounds complains of an "injury caused by the state-court judgment." See Hoblock at 87.[10]

*Rooker-Feldman* does not bar Brody's claims.[11]

---

[10] It should be noted, however, that several cases predating the Supreme Court's clarification of *Rooker-Feldman* doctrine in Exxon Mobil support Defendants' position that Brody's due process claims are barred by *Rooker-Feldman*. See, e.g., Snider v. City of Excelsior Springs, 154 F.3d 809 (8th Cir. 1998) (Plaintiffs' federal lawsuit alleging, inter alia, constitutionally insufficient notice of state court condemnation proceedings was barred by *Rooker-Feldman*); Ritter v. Ross, 992 F.2d 750 (7th Cir. 1993) (Plaintiffs' federal lawsuit alleging, inter alia, constitutionally insufficient notice of state court tax lien foreclosure proceedings was barred by *Rooker-Feldman*).

Ritter is instructive. In Ritter, plaintiffs received notice of the tax foreclosure sale of their property, but neglected to challenge the proceedings in state court. After their property was sold, plaintiffs subsequently challenged the content of the notice in federal court as constitutionally insufficient. Ritter v. Ross, 992 F.2d 750, 751-52. The Seventh Circuit upheld dismissal of plaintiffs' claim under *Rooker-Feldman* because plaintiffs' injury was caused by the state-court judgment, and concurrently (or, perhaps consequently) because plaintiffs' federal claim was "inextricably intertwined" with the state proceeding. "[B]ut for the tax lien foreclosure judgment in [state court] [plaintiffs] would have no complaint; they would still have their land and would have suffered no injury." Id. at 754. "The Ritters, like the plaintiff in *Rooker*, are essentially seeking a federal district court appellate review of a state judicial proceeding; their claims against Defendants are inextricably intertwined with the merits of that proceeding." Id. at 754-55.

In 2005, the Supreme Court clarified and narrowed *Rooker-Feldman* doctrine in Exxon Mobil, 544 U.S. 280. "[*Rooker-Feldman*] is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil, 544 U.S. 280, 284. In so narrowing *Rooker-Feldman*, the Supreme Court explicitly overturned the Third Circuit's dismissal of the case as "inextricably intertwined" with the state-court judgment. "[N]either *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court." Id. at 292. The Second Circuit, when it subsequently interpreted Exxon Mobil, disavowed its former reliance on the "inextricably intertwined" language. "[T]he phrase 'inextricably intertwined' has no independent content. It is simply a descriptive label attached to claims that meet the requirements outlined in Exxon Mobil" – i.e., "a federal claim… that asserts injury based on a state judgment and seeks review and reversal of that judgment." Hoblock, 422 F.3d 77, 86.

One might think that Exxon Mobil and Hoblock render the reasoning of Ritter inapposite in this Circuit. Yet the Seventh Circuit, building upon Ritter, announced a narrower construction of *Rooker-Feldman* doctrine that predated and informed the reasoning of Exxon Mobil by focusing on the requirement that the injury be "caused by the state-court judgment." See GASH v. Rosemont, 995 F.2d 726, 728 (7th Cir. 1993) (summarizing Ritter approvingly, stating, "*Rooker-Feldman* doctrine barred the litigation, because the [Ritters'] injury stemmed from the state judgment--an erroneous judgment, perhaps, entered after procedures said to be unconstitutional, but a judgment nonetheless."); Garry v. Geils, 82 F.3d 1362 (7th Cir. 1996) (citing Ritter and GASH approvingly to dismiss plaintiffs' constitutional claims, stating, "[T]he injury alleged was only complete when the state court actually condemned the property. Thus plaintiffs are basically claiming injury at the hands of the state court."). Exxon-Mobil then reaffirmed the requirement that plaintiff's injury be "caused by the state-court judgment" and in doing so, cited the Seventh Circuit's construction approvingly for a related proposition. See Exxon-Mobil, 544 U.S. at 293 ("If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has

B.  <u>Application of *Res Judicata* and Collateral Estoppel to Brody's Damages Claims</u>

Defendants argue that insofar as Brody seeks damages and revestment of title to his property as relief for his alleged constitutional injuries, such claims are barred by *res judicata* and collateral estoppel principles.  As I have bifurcated trial of this matter into a determination of "actual notice," and subsequent determination of damages, if any, I will not reach this motion until the determination on Brody's notice claim.  <u>See</u> note 1, <u>supra</u>.

C.  <u>Brody's Standing to Challenge Lack of Notice of Public Hearings</u>

In <u>Brody II</u>, the Second Circuit held that Brody lacked standing to challenge lack of notice of the two public hearings, on June 7 and July 6, 1999.  <u>Brody II</u> at 108-111.  Brody, having now amended his complaint, reasserts standing to challenge his lack of notice of these two meetings.  Defendants argue that the Second Circuit's ruling constitutes either *res judicata* or "law of the case" on this issue.  However, as the Second

---

reached in a case to which he was a party . . ., then there is jurisdiction…'"), <u>quoting</u> <u>GASH v. Rosemont</u>, 995 F.2d 726, 728; <u>accord</u>, <u>Hoblock</u>, 422 F.3d 77, 86.  Indeed, the Second Circuit recognized in <u>Hoblock</u> that the Seventh Circuit had adopted a "narrower construction," unlike our Circuit, which had interpreted the "inextricably intertwined" language broadly.  <u>Hoblock</u>, 422 F.3d 77, 84, <u>citing</u> <u>GASH v. Rosemont</u>, 995 F.2d 726, 728.

Given this caselaw, a fair argument exists that pursuant to <u>Ritter</u> – and <u>Exxon Mobil</u> and <u>Hoblock</u> today, in this Circuit – Brody's due process claim is barred by *Rooker-Feldman* because his injury was not complete until the state court condemned his property, and thus, the state court judgment "caused" his injury.

Yet even if the Seventh Circuit correctly imposed the <u>Hoblock</u> requirements before <u>Hoblock</u> did so, I decline to follow the <u>Ritter</u> Court's application.

First, the <u>Ritter</u> Court conflates the constitutional injury owing to lack of due process with the injury from the taking of the property, when both are separable and distinct.

Secondly, this Court, and I believe our Circuit, takes a different view of "causation" than the <u>Ritter</u> Court.  Both the Seventh Circuit and our Circuit appear to adopt a "but-for" causation standard.  <u>See</u> <u>Ritter</u> at 754 ("but for the tax lien foreclosure judgment… [plaintiffs] would have suffered no injury…"); <u>Hoblock</u> at 89 ("…but for the state court's judgment ordering the Board not to do so, the Board would have counted the challenged absentee ballots…")  However, in <u>Hoblock</u>, the Board sought to take one action, and the state court ordered another.  In <u>Ritter</u>, and Brody's case, the local authorities sought to acquire title to the property – and the state court ratified their petition.  To this Court, interpreting <u>Hoblock</u>, it appears that the injury Brody complains of – whether his lack of notice or the eventual condemnation – is initiated and proximately caused by the Village, not the state court judgment, and that Brody's due process claim survives *Rooker-Feldman*.

In any event, because it appears to this Court that <u>Ritter</u> and its progeny rested their holdings to some extent on the now-discredited "inextricably intertwined" reasoning, I will not rely on that caselaw here.  However, as both parties are no doubt aware, this Court, or indeed, the appellate court, may raise the lack of subject matter jurisdiction at any stage in this litigation.

[11] Brody's equal protection claim, discussed *infra*, appears to be both a facial and as-applied challenge to the EDPL condemnation provisions.  Because Brody's equal protection claim fails on its own merits, I will decline to address whether it is barred by *Rooker-Feldman* or Defendants' other procedural arguments.

Circuit recognized when it revisited its own <u>Brody I</u> ruling on standing, "law of the case doctrine" is a "discretionary doctrine" which does not prevent a court from "reconsider[ing] its prior holding on the basis of new evidence."  <u>Brody II</u> at 110. Indeed, the Second Circuit has previously provided plaintiffs with an opportunity to amend their complaint in district court to correct standing deficiencies.  <u>Heldman v. Sobol</u>, 962 F.2d 148, 158 (2d Cir. 1992).  Because "law of the case" doctrine does not prevent Brody from attempting to remedy his standing deficiencies, I will consider anew Brody's standing to bring these claims.

### 1. *June 7, 1999 Public Hearing*

The Second Circuit previously found in both <u>Brody I</u> and <u>Brody II</u> that because Brody had actual notice of the first public hearing, attended, and presented his views, he had not alleged any injury sufficient to establish standing to bring his procedural due process claim.  <u>Brody I</u>, 261 F.3d 288, 290; <u>Brody II</u>, 345 F.3d 103, 109.

Brody, in his Amended Complaint, now seeks to challenge not the means, but the content of his notice of the June hearing.  Brody states that although he had actual notice of the time and place of the meeting, he did not have "meaningful notice" of the meeting's nature.  Am. Compl. ¶ 62.  Thus, Brody claims that had he known of the meeting's nature, in addition to speaking at the meeting, he would have "hired an attorney and made sure to raise all of his legal objections against a possible future condemnation," and "organized others in the community against the project and either stopped it entirely or delayed it."  Am. Compl. ¶¶ 35-36.

Defendants, aside from their procedural arguments, argue only that the nature of Brody's notice is irrelevant, as Brody is not entitled to be informed of the procedures for challenging the taking of his property.  <u>See</u> <u>Brody III</u> at 132.  However, if the Village begins a proceeding that threatens to deprive an owner of his property interest, the owner is entitled to "as much notice as is practicable."  <u>Cf.</u> <u>Brody III</u> at 132 (property owners are entitled to notice of commencement of challenge period, albeit not procedures for challenging).

That said, Brody's alleged injury stemming from insufficient content of the notice of the Determination and Findings is substantively different, and more ascertainable, than his "injury" stemming from insufficient content of the notice of the first public hearing.

11

His injury stemming from insufficient content of the notice of the Determination and Findings is that he was not informed of the commencement of the challenge period, lost his opportunity to challenge the condemnation, and thus, the outcome would have been different in that he might not have lost his property.  See Brody II at 112.  Yet Brody lost no opportunity respecting the first public hearing.  Brody received notice, appeared, and commented.  His alleged "injuries" – i.e. that he could have hired a lawyer and organized opposition – are actions that, aside from their speculative nature, Brody had every opportunity to take given the notice he actually received.[12]

As the Second Circuit held in Brody I and Brody II, Brody has still not alleged injury-in-fact sufficient to establish standing to challenge the alleged lack of notice of the first public hearing.

### 2.  July 6, 1999 Public Hearing

In Brody II, the Second Circuit held that Brody lacked standing to challenge his notice of the second public hearing because "Brody has not alleged what he would have said or responded to had he attended the July 6 meeting."  Brody II, 345 F.3d at 111.  The Second Circuit allowed that it was "theoretically possible for Brody to allege an injury…"  For example, "had he been aware of the second [meeting], he would have participated and have had information to add in response to remarks made by others…"  Id.

Brody now avers in his Amended Complaint that he "would have attended and made additional arguments that he could have then raised in an EDPL proceeding," and that again, he would have hired an attorney, raised legal objections, and organized others to stop the project.  Am. Compl. ¶ 40.

On the face of his pleadings, Brody has remedied his lack of standing to challenge his notice of the second public hearing.  Defendants correctly point out that Brody has not alleged with particularity what, exactly, he would have said at that second public hearing.  However, such an argument is better made on a motion for summary judgment, rather than a motion pursuant to Rule 12(c) in which "[t]he court must accept the allegations

---

[12] Further, there was no exclusive "opportunity to be heard" that commenced at that meeting and potentially affected Brody's rights.  Whether Brody could have brought a lawyer to that first public meeting is irrelevant to his potential court challenge of the Village's condemnation proceeding during the exclusive 30-day period.

contained in the complaint as true and draw all reasonable inferences in favor of the non-movant."  See Quinones v. Chater, 1996 U.S. Dist. LEXIS 980, at *3.

    D.  Equal Protection Claim

    Brody's Amended Complaint appears to attempt to state facial and as-applied equal protection claims.  Brody's facial claim alleges that the Village has "treated similarly situated persons differently" by "affording substantially less due process protection to owners whose property is taken pursuant to the EDPL than is afforded to proprietors of liberty and property interests in other contexts… such as forfeiture."  Am. Compl. ¶ 77.  Brody's as-applied claim further alleges that he suffered damages "as a direct and proximate result of the Village's application of the EDPL notice and hearing provisions to Plaintiff."  Id.  Defendants argue that Brody's complaint fails to state an equal protection claim on its merits.  I agree.

    As Defendants note, Brody does not adequately allege that he is "similarly situated" to others.  Brody attempts to cast his equal protection claim as a facial attack on the EDPL procedures, in the manner of Lindsey v. Normet, 405 U.S. 56, 76 (U.S. 1972), in which the Supreme Court struck down a state requirement that tenants post bonds to appeal as an arbitrary and capricious burden on the right to appeal.  In Lindsey, however, plaintiffs were similarly situated to other litigants seeking to procedurally appeal.  Here, Brody, a condemnee, is not similarly situated to those whose property is seized pursuant to forfeiture statutes.  As Defendants note, the two sets of statutes serve two different purposes – one compensatory, and one punitive.  Compare Kohl Industrial Park Co. v. County of Rockland, 710 F.2d 895, 900 (2d Cir. 1983) (discussing constitutional right to just compensation) with United States v. All Funds Distributed to Weiss, 345 F.3d 49, 55 (2d Cir. 2003) (discussing quasi-criminal nature of in rem civil forfeiture proceedings).  Affected property owners are not similarly situated under the two statutes (and indeed, it follows in short order that rational reasons appear to exist for the state's adoption of differing procedures).

    Additionally, the Second Circuit has already found the EDPL procedures at issue to be constitutionally valid under the Due Process Clause.  See Brody III at 133-36.  That holding severely undercuts the central premise of Brody's facial equal protection claim,

i.e. that the EDPL condemnation statutes afford "substantially less due process" than other statutes.

To the extent that Brody alleges an as-applied equal protection claim, he has not alleged "selective enforcement" based on impermissible considerations such as race, religion, intent to inhibit constitutional rights, or malicious or bad faith intent to injure. See Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 234 (2d Cir. 2004). Nor has Brody sufficiently alleged a "class of one" claim, where the plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. See Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001), citing Willowbrook v. Olech, 528 U.S. 562, 563 (U.S. 2000). Brody's equal protection claims must be dismissed.

## IV.   CONCLUSION

Accordingly, I deny Defendants' motion to dismiss this action for lack of subject matter jurisdiction pursuant to *Rooker-Feldman* doctrine. I grant Defendants' motion for judgment on Brody's due process challenge to the first public hearing, owing to Brody's lack of standing, but deny Defendants' motion for judgment on Brody's due process challenge to the second public hearing. I grant Defendants' motion to dismiss Brody's equal protection claim on its merits.

The Clerk of the Court is directed to close this motion and remove it from my docket.

**SO ORDERED.**
**March ___, 2007**
**New York, New York**

_____
U.S.D.J.

14