**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x
**WILLIAM BRODY,**                                  :
                                                    :
                     **Plaintiff,**        :
                                                    :       **00 Civ. 7481 (HB)**
    - against -                               :
                                                    :
                                                    :       **OPINION AND**
                                                    :       **ORDER**
**VILLAGE OF PORT CHESTER,** *et. al.***,**          :
                                                    :
                     **Defendants.**       :
-------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

       Plaintiff William Brody ("Plaintiff" or "Brody"), in this long-running litigation to challenge the taking of his property, brings, pursuant to his Amended Complaint of August 28, 2006, constitutional claims against Defendants Village of Port Chester (the "Village"), G&S Port Chester LLC ("G&S"), Village of Port Chester Industrial Development Agency ("Village IDA"), and Hudson United Bank Co. ("Hudson") (collectively, "Defendants"). Brody's remaining claim alleges, pursuant to 42 U.S.C. § 1983, violations of procedural due process by Defendants relating to the condemnation of his property by the Village under N.Y. E.D.P.L. § 201 *et. seq.*[1]

       Brody now moves for partial summary judgment on his procedural due process claims against Defendants. Brody seeks a declaratory judgment that his procedural due process rights were, in fact, violated, and an award of nominal damages of $1.[2]

       Because genuine issues of material fact remain as to whether Brody had "actual notice" of the condemnation proceedings, Brody's motion for partial summary judgment is denied.

---

[1] On March 7, 2007, I dismissed Brody's equal protection claim. See Brody v. Port Chester, 2007 U.S. Dist. LEXIS 15746, at *25-28 (S.D.N.Y. Mar. 7, 2007).

[2] On January 23, 2007, I ordered trial of this matter to be bifurcated into two phases – 1) a determination of whether Brody received "actual notice," pursuant to the Second Circuit's remand, see Brody v. Port Chester, 434 F.3d 121, 123 (2d Cir. 2005); and 2) a later determination of Brody's resultant damages, if any. Trial of the determination of whether Brody received "actual notice" is set for March 19, 2007.

Although Brody seeks an award of nominal damages on this summary judgment motion, he does not waive his claims for additional equitable damages pursuant to 42 U.S.C. § 1983 that may be determined at a future date.

## I.    BACKGROUND

Familiarity is assumed with facts and prior opinions in this litigation.[3]  A brief recounting of the facts germane to this motion follows.

### A. Environmental Review Process

In 1996, Plaintiff William Brody purchased commercial property in an area of the Village of Port Chester that had long been slated for redevelopment.  See Brody v. Village of Port Chester, 434 F.3d 121, 124 (2d Cir. 2005) ("Brody III").  In 1998, according to Brody, he heard that the property might be part of another proposed redevelopment plan.  Brody avers he called the Port Chester mayor over twenty times and went to the library to look up eminent domain law.  See Affidavit of Plaintiff William Brody, December 29, 2006 ("Brody Aff."), at ¶¶ 7, 12-13.

On November 18, 1998, the Village published and made available for public review and comment a Supplemental Draft Environmental Impact Statement ("Draft EIS"), pursuant to the New York State Environmental Quality Review Act, which requires local governments to prepare an environmental impact statement for any proposed action that may have an effect on the environment.  See N.Y. ENVTL. CONSERV. § 8-0109(2) (2007).  The Village, in Section 2.3.8 of that Draft EIS, summarized (albeit not entirely correctly) the then-operative sections of New York Eminent Domain Procedure Law relevant to a potential challenge to a taking of property.  The Village's summary read as follows:[4]

---

[3] See (in chronological order) Minnich v. Gargano, 2001 U.S. Dist. LEXIS 372 (S.D.N.Y. Jan. 18, 2001); Brody v. Village of Port Chester, 261 F.3d 288 (2d Cir. Aug. 8, 2001) ("Brody I"); Minnich v. Gargano, 2001 U.S. Dist. LEXIS 14760 (S.D.N.Y. Sept. 20, 2001); Brody v. Village of Port Chester, 345 F.3d 103 (2d Cir. Sept. 24, 2003) ("Brody II"); Brody v. Village of Port Chester, 2005 U.S. Dist. LEXIS 13 (S.D.N.Y. Jan. 4, 2005); Brody v. Village of Port Chester,, 434 F.3d 121 (2d Cir. Dec. 5, 2005) ("Brody III").

[4] The SDEIS also attached an Appendix of relevant verbatim provisions of the N.Y. E.D.P.L.  Strangely, the SDEIS omitted N.Y. E.D.P.L. §§ 207 and 208, the sections which provide for judicial review of takings.  See Belowich Decl. Ex. B.

> "The EDPL requires the condemnor to review the public purpose of a proposed condemnation at a public hearing held at least ten (10) but no more than thirty (30) days prior notice by publication. At the hearing, the condemnor must outline the purpose and proposed location or alternate locations of the public project.
>
> "The hearing may be adjourned without limit from time to time. Within ninety (90) days after the close of the hearing the condemnor must issue its determination and findings, which must minimally specify (a) the public purpose of the project, (b) the location of the project and the reasons for selection of that location and (c) the general impact of the project on the environment and residents of the locality.
>
> "The determination and findings are reviewable by the Appellate Division in an Article 78 proceeding commenced within thirty (30) days after the completion of the publication of the determinations."

Declaration of Brian Belowich, January 9, 2007 ("Belowich. Decl."), at Ex. A.

As Brody points out, the Village incorrectly stated that the Determination and Findings are reviewable in an Article 78 proceeding. Rather, the Determination and Findings are exclusively reviewable in a proceeding pursuant to N.Y. E.D.P.L. § 207. N.Y. E.D.P.L. § 207(B). Aside from that incorrect statement of jurisdiction, the Village more or less stated the applicable procedural requirements of E.D.P.L. § 207 correctly. An E.D.P.L. § 207 proceeding must, in fact, be brought in the Appellate Division. See id. The time limit for such an EDPL proceeding is, in fact, 30 days. See id.

Conversely, however, the period to seek Article 78 review is 120 days, not 30. Also, Article 78 relief is sought in the Supreme Court, not the Appellate Division. N.Y. C.P.L.R. §§ 217, 7804.[5]

In any case, Brody submitted a letter of comment in response to the Draft EIS, dated January 11, 1999, in which he asked, inter alia, "[D]oes this seizure violate my rights under the state constitution…" Brody Aff., Ex. B.

In March 1999, the Village published and made available for public review and inspection a Supplemental Final Environmental Impact Statement ("Final EIS"). See Belowich Decl., Exs. B, C. The Final EIS repeated the partially incorrect statements

---

[5] Defendants, on their part, argue that if Brody had sought to challenge the taking in the form of an Article 78 proceeding, the court would have converted the case into its proper form, pursuant to N.Y. C.P.L.R. 103(c). The Second Circuit, ruling on a related issue, has cast doubt on this argument. See Brody II, 345 F.3d 103, 115-16 (2d Cir. 2003) (N.Y. C.P.L.R. 103(c) did not provide jurisdiction to bring Article 2 claims pursuant to EDPL in Article 4 proceeding, because specific grant of jurisdiction of EDPL trumped general grant of jurisdiction of CPLR 103(c)).

In any event, it is undisputed that Brody never brought any sort of action challenging the constitutionality of the Determination and Findings.

made in Section 2.3.8 of the Draft EIS regarding a challenge to a Determination and Findings under New York eminent domain law. The Final EIS also incorporated by reference the Appendix of the Draft EIS that included verbatim sections of the N.Y. E.D.P.L. See id. The Final EIS also specifically responded to Brody's comment letter, stating generally that the "redevelopment of a designated urban renewal area is a public purpose," but did not, in that response, address procedures to challenge the taking. See Affidavit of Dana Berliner, December 29, 2006 ("Berliner Aff."), Ex. C at 6-2.

Brody hired the attorney Garrison Corwin to represent him in the environmental review process. Brody Aff. ¶ 9. Corwin reviewed the SFEIS and "three volumes of" the SDEIS. Brody Aff., Ex. A at 5-6. On March 18, 1999, Corwin and Brody attended the Village's public hearing regarding the SFEIS, at which Corwin spoke on Brody's behalf. Brody Aff., Ex. A at 5-8. Brody avers, and the transcript of the hearing appears to bear him out, that at the March 18, 1999 hearing, neither the EDPL, the date of issuance of the determination and findings, nor the attendant 30-day review period was discussed. Brody Aff., Ex. A.

Corwin subsequently sent a one-page letter to Brody on March 19, 1999, outlining his possible legal options regarding the environmental review process. Belowich Decl., Ex. E. Corwin recommended that Brody take "no specific action until we have the actual approval resolution in connection with the [Final EIS]," and that Corwin would meet with the Village's special counsel regarding the urban renewal proceedings to "discuss the situation, generally." Id. Generally, Corwin avers that he did not represent Brody in connection with eminent domain proceedings and did not give him advice regarding New York eminent domain procedures. Berliner Aff., Ex. H.

B. Public Hearings

On May 22, 1999, the Village published notice of a public hearing to be held on June 7, 1999 regarding the public use of the redevelopment project. Brody Aff. Ex. C. The hearing notice stated the time, place, and subject matter of the hearings, and cited to Article 2 of the EDPL (albeit not EDPL § 207 specifically). Id. Brody heard about the June 7, 1999 hearing, attended, and spoke for four minutes. Brody Aff. ¶ 16. Brody generally avers that he thought this hearing was "just an intermediate step" and that "anything that happened would happen much later." Brody Aff. ¶ 21-22. Defendants

4

admit that Brody and the other attendees were not told that the hearing would result in a "determination and findings." Defendant's Response to Plaintiff's Local Rule 56.1 Statement ("Def. Facts"), ¶ 26.

Shortly after the June 7, 1999 hearing, the Village published notice of a second public use hearing, which was held on July 6, 1999. See Brody I, 261 F.3d 288, 290 (2d Cir. 2001). Brody avers that he did not receive notice of this hearing. Brody Aff. ¶ 24. In any event, it is undisputed that Brody did not attend it. Id. Brody's comments at the first hearing were included as part of the overall record of the July 6, 1999 hearing. See Brody III, 434 F.3d 121, 125 (2d Cir. 2005).

### C. Publication of Determination and Findings

On July 14, 1999, a public meeting (which the Village avers, and Brody does not contest, was duly noticed) was held with respect to the redevelopment project. See Berliner Aff., Ex. J. At this meeting, the Village adopted its Determination and Findings regarding the project. Berliner Aff., Ex. J; Belowich Decl., Ex. R.

On July 18 and 19, 1999, the Village published in the local newspaper a synopsis of the Determination and Findings. Brody Aff., Ex. G. The synopsis stated the public use of the project, and identified Brody's property by tax block and lot number. Id. The synopsis did not state that its publication commenced the 30-day period to challenge a taking under the EDPL. Id.

It is undisputed that the Village did not send Brody personal notice of the Determination and Findings. Brody Aff. ¶ 26. Brody avers that he did not know the Determination and Findings existed, and would have challenged them if he knew he could have challenged them. Id. at ¶¶ 27-28. Defendants dispute Brody's contentions. These disputes form the crux of this motion.

### D. Stanley Perelman Conversation

In late July or early August 1999, Stanley Perelman, a principal of G&S Port Chester LLC, called Brody with respect to his property. Berliner Aff., Ex. F at 17-19. (Perelman and Brody had previously met at Brody's property towards the end of 1998, during which Perelman spoke with Brody about the SDEIS and the public hearings. Berliner Aff., Ex. F at 20-22.) During this conversation in 1999, Perelman averred that

Brody made it clear that he "didn't want to fight" and "wanted to come to a mutually agreeable number and settle out and go on with life…" Berliner Aff., Ex. F at 34.

Perelman stated that he explained to Brody that "we received approval on July 14" – indeed, "all of [his] approvals on July 14," and that "we got the finding…" Berliner Aff., Ex. F at 34-35. Perelman stated that Brody asked him "have the appeals expired[?]" Id. at 35-36. Perelman responded, "no, and then we talked about not fighting…" Id. at 36.[6] Perelman, when asked at his deposition to clarify "what appeals," responded, "there are different appeal periods for different approvals. Some are thirty days…" Id. at 61. It is not established that Perelman passed this information regarding the thirty-day period on to Brody. Generally, Perelman stated that he "didn't tell [Brody] anything" about eminent domain procedures law. Id. at 35.

Brody, for his part, testified at his deposition that "If [Perelman] had told me in 1999 that the Village had adopted its Determination and Findings, I certainly wouldn't have understood what he meant… [H]e's not from the Village, he's not in a position to make a determination of findings, so if he had said something in conversation, I wouldn't have paid any attention to it." Belowich Decl., Ex. N at 84-86.

In any event, Brody did not challenge the Determination and Findings within the required thirty-day period, thus losing his rights to challenge the condemnation of his property on constitutional or statutory grounds. Brody Aff. ¶ 28; see N.Y. E.D.P.L. § 207.

E.  State Court Proceedings

On April 25, 2000, the Village filed a petition in state court pursuant to N.Y. E.D.P.L. § 402 to acquire title to the redevelopment project area, including Brody's property. Brody III, 434 F.3d at 125. On May 17, 2000, Brody challenged the petition and interposed several affirmative defenses. His defenses related exclusively to compensation. Brody's new counsel, Charles McGroddy, had correctly informed Brody

---

[6] "[W]e were having a discussion, saying that we have all of our approvals down… but have all of the appeals expired, and I said no." Id. at 60-61.

that he had lost the opportunity to challenge the taking on constitutional grounds, because the 30-day window to do so had already closed.[7]

Eventually, on January 24, 2006, New York state Supreme Court awarded Brody $2.57 million as just compensation for the taking of his property, pursuant to Article 5 of the EDPL. See In the Matter of the Village of Port Chester, No. 006448/00 (N.Y. Sup. Ct. Jan. 26, 2006) (Rosato, J.). Brody has appealed that order. His appeal remains pending. See generally Opinion and Order of March 7, 2007.

    F.   Federal Court Proceedings

On October 4, 2000, Brody (joined by other Port Chester property owners) commenced a lawsuit in this Court that challenged the Village's taking of his property on constitutional grounds. Brody alleged that the notice of the taking that the Village provided was constitutionally insufficient to satisfy procedural due process. Several years of litigation followed, which is summarized in prior opinions.

On December 5, 2005, the Second Circuit held that the process afforded by the Village to Brody regarding its Determination and Findings was indeed constitutionally inadequate. Brody III, 434 F.3d 121, 123 (2d Cir. 2005). The Second Circuit held that due process required the Village to provide personal notice (such as a letter by mail), where practicable, of the commencement of the exclusive thirty-day challenge period.[8] See Brody III, 434 F.3d 121, 128, 132 ("[W]here, as here, a condemnor provides an exclusive procedure for challenging a public use determination, it must also provide notice in accordance with the rule established by *Mullane* and its progeny…. '[R]easonable notice' under these circumstances must include mention of the commencement of the thirty-day challenge period.")[9] It is undisputed that the Village did not provide such personal notice, such as a letter by mail, to Brody of the publication of

---

[7] "Except as expressly set forth in section two hundred seven… no court of this state shall have jurisdiction to hear and determine any matter, case or controversy concerning any matter which was or could have been determined in a proceeding under this article." N.Y. E.D.P.L. § 208.

[8] "Where the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." Brody III at 129, citing Mullane v. Cent. Hanover Bank & Trust, 339 U.S. 306, 318 (1950). "This rule has been applied in condemnation compensation proceedings to require individualized notice by mail; [Citations] …we see no reason why the rule should not apply here." Brody III at 129 (citations omitted).

[9] The Second Circuit noted, however, that "beyond that, property owners are generally charged with knowledge of the laws relating to property ownership." Brody III at 132, citing North Laramie Land Co. v. Hoffman, 268 U.S. 276, 283 (1925).

the Determination and Findings.[10] The Second Circuit thus remanded Brody's case to this Court for a determination of whether Brody received "actual notice" of the Determination and Findings, as well as Brody's resultant damages, if any, from any due process violation. Brody III at 124.[11]

## II.     STANDARD OF REVIEW

A court will not grant a motion for summary judgment unless it determines that there is no genuine issue of material fact and the undisputed facts are sufficient to warrant judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The moving party bears the burden of demonstrating the absence of a material factual question.[12] Anderson v.

---

[10] "Personal notice," as the term is used here (e.g., the provision of notice by mail, rather than by publication), is distinct from the concept of "actual notice" (i.e., the actual receipt of notice by the intended recipient). See note 15, infra.

[11] The Second Circuit's opinion dealt exclusively with Brody's lack of notice of the Determination and Findings, see Brody III at 128, and concurrently, Brody's summary judgment motion appears directed primarily at his alleged lack of notice of the Determination and Findings.

It should be noted, however, that on August 30, 2006, Brody amended his Complaint to attempt to cure standing deficiencies and thus re-allege constitutional due process violations resulting from the alleged lack of notice of the two public hearings. In a separate Opinion and Order, I held that Brody lacked standing to challenge his lack of notice of the first public hearing, but possessed standing to challenge his lack of notice of the second public hearing. See Brody v. Port Chester, 2007 U.S. Dist. LEXIS 15746, at *20-25.

I decline to grant, at this point, summary judgment on Brody's claim of lack of notice of the second public hearing.

[12] Brody argues that Defendants bear the burden on this motion for summary judgment to prove "actual notice." He argues that "actual notice" is an affirmative defense to a procedural due process claim. See, e.g., Gonzalez-Gonzalez v. United States, 257 F.3d 31, 36 (1st Cir. 2001) (stating that "actual knowledge" is affirmative defense to a due process claim for lack of notice of a civil forfeiture proceeding). Defendants rebut that in the Second Circuit, plaintiffs in a § 1983 action have the ultimate burden of proving every element of the due process claims alleged. See, e.g., Miner v. City of Glens Falls, 999 F.2d 655, 660 (2d Cir. 1993) (in procedural due process claim, it was plaintiff's "burden to show that the property or liberty deprivation for which he sought compensation would not have occurred had proper procedure been observed.")

Both parties' arguments are irrelevant to this motion, as both parties address Brody's ultimate burden at trial, not Brody's burden on summary judgment. Brody's burden on summary judgment remains, like any movant's, to demonstrate the absence of a material factual question. In evaluating his motion, the Court will resolve all ambiguities and draw all inferences against him. Brody thus has the burden on this motion to show no genuine issue of material fact as to his lack of "actual notice."

FDIC v. Giammettei, 34 F.3d 51, 54-55 (2d Cir. 1994) is not apposite to the instant situation. The FDIC Court stated that "[w]here a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense -- on which the defendant bears the burden of proof at trial -- a plaintiff 'may satisfy its Rule 56 burden by showing 'that there is an absence of evidence to support [an essential element of] the [non-moving party's] case.'" FDIC v. Giammettei, 34 F.3d 51, 54, citing, e.g.,

8

Liberty Lobby, 477 U.S. 242, 247.  In determining whether there is a genuine issue of material fact, the Court must resolve all ambiguities, and draw all inferences, against the moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962) (per curiam); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987).  However, a disputed issue of material fact alone is insufficient to deny a motion for summary judgment; the disputed issue must be "material to the outcome of the litigation," Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), and must be backed by evidence that would allow "a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); see also Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992).

### III.    DISCUSSION

Brody seeks partial summary judgment on his claim that his procedural due process rights to notice of the Village's Determination and Findings were violated.[13]  Due process requires that a deprivation of property be preceded by notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action."  Brody III at 127, citing Mullane v. Cent. Hanover Bank & Trust, 339 U.S. 306, 314 (1950).  As noted, the Second Circuit has found that the notice of the Determination and Findings that the Village afforded to condemnees was constitutionally inadequate.  See Brody III at 124.  Thus, the remaining salient issue on remand is whether Brody possessed "actual notice."  "If a party receives actual notice that apprises it of the pendency of the action and affords an opportunity to respond, the due process clause is not offended."  Baker v. Latham Sparrowbush Assocs., 72 F.3d 246, 254 (2d Cir. 1995), citing United States v. One 1987 Jeep Wrangler, 972 F.2d 472, 482 (2d Cir.

---

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  However, the FDIC Court, in defining "absence of evidence," referred to situations in which there was "a complete failure of proof concerning an essential element of the [defendant's affirmative defense]."  FDIC at 54.  Such "complete failure of proof" on the part of Defendants is not the situation here.

[13] Defendants, on their part, request that I "search the record" and grant partial summary judgment to them on the issue.  See Bah v. Nordson Corp., 2005 U.S. Dist. LEXIS 15683, at *52 (S.D.N.Y. 2005) ("[A]s long as some party has made a motion for summary judgment, a court may grant summary judgment to a non-moving party, provided that party has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried."), citing First Financial Insur. Co. v. AllState Interior Demolition Corp., 193 F.3d 109, 115 (2d Cir. 1999).

9

1992) (summarizing Mullane and Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798-800 (1983), as "impliedly holding that actual notice satisfies demands of due process"); see also Lopes v. United States, 862 F. Supp. 1178, 1188 (S.D.N.Y. 1994) ("…[W]here there is actual notice there is no due process violation.").[14]

Because genuine issues of fact remain as to whether Brody possessed "actual notice" of the Determination and Findings, I must deny summary judgment. After addressing the threshold issue of the definition of "actual notice," I will address each genuine issue of fact in turn.

A.  Definition of "Actual Notice"

As a threshold matter, the parties dispute the definition of "actual notice" that governs our inquiry on remand. Although genuine issues of fact remain as to "actual notice" under either party's construction of the term, I will explicate relevant principles to guide the parties as we proceed towards trial.

First, Brody argues that "actual notice" is equivalent to "actual knowledge." This is incorrect. "Actual notice" is a legal term of art that refers to "notice given directly to, or received personally by, a party." Black's Law Dictionary 1087 (7th ed. 1999), cited by Dusenbery v. United States, 534 U.S. 161, 170 n.5 (U.S. 2002) (equating "actual notice" with "receipt of notice").[15] "Actual knowledge" refers to a subjective state of mind (here, the state of mind of the purported recipient of notice).

---

[14] Presumably, such a finding of "actual notice" would defeat Brody's due process claim on the theory that Brody could not either 1) state an injury-in-fact and thus possess standing to bring his due process claim, or 2) claim resultant damages even if he does possess standing. See generally Brody II at 108-113; see also United States v. One Dodge Durango 2004, 2006 U.S. Dist. LEXIS 83521, at *16 (D.P.R. 2006) ("[B]ecause claimant had actual notice of the United States' intent to forfeit the defendant property, the Court finds that [claimant] suffered no prejudice from the inadequate notice."), citing Gonzalez-Gonzalez v. U.S., 257 F.3d 31, 36 (1st Cir. 2001).

[15] The Dusenbery Court pointed out, as the Black's definition allows for, that "actual notice" has alternatively been used both 1) to distinguish notice by mail (i.e. "personal notice") from notice by publication, and 2) to refer to the actual receipt of the notice by the intended recipient. Dusenbery v. United States, 534 U.S. 161, 170 n.5 ("[T]he term 'actual notice' is not free from ambiguity as used by this Court…")
Here, as the Dusenbery Court concluded, I will equate "actual notice" with "receipt of notice." In any event, it is clear that both definitions of "actual notice" are distinct from the state of mind of "actual knowledge," as discussed infra. Indeed, at the risk of complicating matters even further, the U.S. Supreme Court has distinguished an executor's constitutional responsibility to provide "actual notice" of probate proceedings where such executor possesses "actual knowledge" of the recipient's claim against the estate. See Tulsa Professional Collection Services, Inc. v. Pope, 485 U.S. 478, 491 (U.S. 1988).

10

Although the two concepts overlap, they are not equivalent.  "Actual knowledge" is generally a sufficient, but not necessary, condition for a finding of "actual notice."  One who possesses "actual knowledge" of a fact will invariably, as a logical necessity, have received "actual notice" of that fact (although perhaps not from the party charged with the responsibility of providing "notice" in a constitutional sense).  See, e.g., GAC Enters. Inc. v. Medaglia, 52 F.3d 451, 455 (2d Cir. 1995) ("where a claimant demonstrated actual knowledge of the seizure of property in an administrative forfeiture proceeding the government's failure to provide published notice…" did not violate due process), citing United States v. One 1987 Jeep Wrangler, 972 F.2d 472, 482.

However, one who has been given "actual notice" of a fact may not have "actual knowledge" of that fact.  For example, one could be given notice, but deliberately refuse to receive it.  See Committee on Grievs. of the United States Dist. Court v. Feinman, 239 F.3d 498, 499 (2d Cir. 2001) (where attorney refused receipt of envelope containing complaint, Court held that "a party's constitutional right to receive actual notice of certain claims against him is not violated when he has himself intentionally and successfully thwarted service of the very notice that he claims not to have received."), citing Cherry v. Heffernan, 182 So. 427, 429 (Fla. 1938) ("Having been returned "refused"… it would be ridiculous to assume that [service] was not received.)  Or, one could be given notice, but ignore or fail to understand it.  See Buzinski v. Brown, 6 Vet. App. 360, 365 (Vet. App. 1994) ("Under [plaintiff's] theory, a lack of knowledge [of foreclosure proceedings] is tantamount to a lack of notice and thus a violation of due process. To the contrary… [t]he constitutionality of a foreclosure procedure depends not on the subjective understanding of the property owner, but on the objective propriety of the procedures used.")  Indeed, Defendants argue that an analogous situation happened here when Brody allegedly received notice of the publication of the Determination and Findings and resultant 30-day review period from Perelman and, summarizing Brody's words, "[didn't] pa[y] any attention to it."

Caselaw and statutes make clear that these two concepts of "actual notice" and "actual knowledge," although related, are distinct.  For example, the U.S. Bankruptcy Code specifically provides that if a creditor has either "notice or actual knowledge" (emphasis added) of bankruptcy proceedings, such "notice or actual knowledge" may

preclude that creditor's objection to a discharge of a debt that the debtor failed to list in his bankruptcy filing.[16]  See 11 U.S.C.S. § 523 (a)(3)(B); see also Wheeler v. Newton, 168 A.D. 782 (N.Y. App. Div. 1915) (precursor to bankruptcy statute "requires such personal notice of the proceedings, or actual knowledge equivalent to such personal notice, as would be required in any court where it was proposed to deprive a man of his property [under due process of law].")[17]  Again, although "actual knowledge" may suffice to establish "actual notice," the constitutional inquiry remains "actual notice."

Accordingly, although Brody's "actual knowledge" of the eminent domain proceedings will inform (and if found, in all likelihood conclude) the inquiry of whether he received "actual notice," this Court's inquiry on remand, as the Second Circuit directed, will be Brody's "actual notice."

That said, the parties do not dispute that Brody's "actual notice" must be equivalent to constitutionally sufficient notice for due process to be satisfied.  Here, the Second Circuit has held that constitutionally sufficient notice must include notice of the commencement of the exclusive thirty-day period in which to challenge the taking of property.  See Brody III at 128-132.  Thus, this Court's inquiry on remand will be whether Brody received "actual notice" of these constitutionally sufficient elements of notice articulated by the Second Circuit.  As Defendants note, however, "property owners are generally charged with knowledge of the laws relating to property ownership," see Brody III at 132, citing North Laramie Land Co. v. Hoffman, 268 U.S. 276, 283, and "notice is not required to inform its reader of the procedures for challenging the public

---

[16] Brody cites to a raft of caselaw interpreting the "actual knowledge" requirement of the bankruptcy statute for his proposition that "actual notice" is equivalent to "actual knowledge."  As the bankruptcy statute itself makes clear, Brody's proposition is incorrect.  I will consider Brody's cited bankruptcy cases only as persuasive authority where factually analogous, while keeping in mind that the statutory interpretation of "actual knowledge" under the Bankruptcy Code is not dispositive of the constitutional inquiry into whether Brody's "actual notice" of eminent domain proceedings obviates the insufficiency of the Village's notice under the Due Process Clause.

[17] Concededly, courts have sometimes used the terms "actual notice" and "actual knowledge" nearly interchangeably.  United States v. One 1987 Jeep Wrangler, 972 F.2d 472, 482 (2d Cir. 1992) is instructive.  There, because the claimant "responded to the second seizure with a Notice of Claim… he attest[ed] to the fact that he had received actual notice of the seizure."  Jeep Wrangler at 482 (emphasis added).  The Jeep Wrangler Court then found no due process violation, resting its holding on the fact of plaintiff's "admitted actual knowledge of the seizure."  Id. (emphasis added).  A close parsing of the decision reveals that, as explicated above, plaintiff's "actual knowledge" was a sufficient, albeit not necessary, condition to find the ultimate issue of "actual notice."  Confusion, however, is understandable.

12

use determination." Brody III at 132, citing City of West Covina v. Perkins, 525 U.S. 234, 241 (1999).

    B. Genuine Issues of Material Fact

With these general principles in mind, I turn to the genuine issues of material fact that remain regarding Brody's "actual notice" of the condemnation proceedings.

    *1. Perelman Conversation*

As a general matter, oral notice can suffice to provide constitutionally sufficient notice, although "oral notice must be equivalent to written notice." Ebbert v. DaimlerChrysler, 319 F.3d 103, 116 (3rd Cir. 2003).

Brody argues that Perelman, in his conversation with Brody subsequent to the publication of the Determination and Findings, but (most likely) prior to the expiration of the 30-day challenge period, did not provide Brody with notice of the commencement of the exclusive thirty-day period in which to challenge the taking of his property. At most, Brody argues, Perelman gave him vague information that "approvals" had been granted on July 14, that a "finding" had been "gotten," and that although Perelman told him that "appeals had not expired," and Perelman himself knew that some of these appeals expired within 30 days, Perelman never specifically told Brody that his opportunity to challenge the taking of his property commenced by publication on July 18, 1999 and ended 30 days later.[18]

Defendants argue that given the totality of the circumstances of Brody's involvement in the proceedings relating to his property, including Brody's research of eminent domain law, hiring of counsel during the environmental review process, and his counsel's (if not Brody's) review of the Village's SDEIS which included a (procedurally

---

[18] But compare Buzinski v. Brown, 6 Vet. App. 360. In Buzinski, the VA sent plaintiff a letter stating that his mortgage was in default, that "foreclosure appears probable," and advising him to take "appropriate measures" to avoid the foreclosure, such as contacting the mortgagee, the purchaser, and an attorney." Buzinski, 6 Vet. App. 360, 366. Plaintiff conceded that he had received the letter. Notwithstanding that the letter only stated that "foreclosure appears probable," the Court held that claimant "was put on notice" of the foreclosure proceedings. "[Plaintiff] simply ignored the notice which was afforded him." Id. at 366.

Further, plaintiff subsequently called the VA after receiving a second letter stating that foreclosure was "likely." Id. During this conversation, the VA representative "explained the appellant's rights and duties and obligations to the VA, and entreated the appellant to protect his interests…" Id. "[Plaintiff] took no further action." Id. For this reason as well, "[plaintiff] was aware of the foreclosure proceedings." However, "[a] veteran's failure to zealously guard his rights when put on notice of a foreclosure action is an error of judgment for which the law has no remedy." Id.

13

erroneous) mention of the 30-day challenge period,[19] Brody possessed, following his conversation with Perelman, "actual knowledge," and thus "actual notice," of the condemnation proceedings. Additionally, Defendants argue that it is entirely plausible that even if Brody did, as he avers, lack "actual knowledge" of the condemnation proceedings, Perelman gave Brody "actual notice" of the publication of the Determination and Findings and resultant 30-day challenge period and Brody "didn't pay any attention" to what Perelman told him. Such "actual notice" would obviate any due process violation here.

Genuine issues of fact remain as to the content of the "actual notice" Perelman provided to Brody during this conversation, and the "actual knowledge" Brody possessed of the eminent domain proceedings at this time, insofar as it bears on the issue of Brody's "actual notice." Additionally, a genuine issue of fact remains as to the exact date of Perelman's conversation with Brody.[20] For this reason, I must deny summary judgment to both parties on this issue.[21]

### 2. *Environmental Review Process*

Brody notes, correctly, that even if he possessed "actual knowledge" that a 30-day challenge period existed in the abstract, from his (or his counsel's) involvement in the environmental review process and review of relevant statutes, such "actual knowledge" does not obviate the requirement that he be given notice of the actual commencement of

---

[19] Defendants argue that Brody's counsel's alleged knowledge of the thirty-day challenge period is imputed to Brody under agency principles. "A person has notice of a fact if his agent has knowledge of the fact…. The relationship between an attorney and the client he or she represents in a lawsuit is one of agent and principal." Veal v. Geraci, 23 F.3d 722, 725 (2d Cir. 1994).

[20] Brody notes that the "right to notice and an opportunity to be heard must be granted at a meaningful time…" Hamdi v. Rumsfeld, 542 U.S. 507, 533 (U.S. 2004), citing, e.g., Mullane, 339 U.S. 306, 313; Fuentes v. Shevin, 407 U.S. 67, 80 (1972). Presumably, had Perelman given Brody notice one day before his right to challenge expired, such notice would not be constitutionally sufficient. Had Perelman given Brody notice earlier, the situation might be different. Cf. Anderson v. Davila, 125 F.3d 148, 157 (3rd Cir. 1997) (where Government's attorneys had actual notice of complaint two weeks before preliminary injunction hearing, under Fed. R. Civ. P. 6(d), "[those] two weeks provided the defendants with a fair opportunity to prepare to explain their actions to the district court."), citing Fuentes v. Shevin, 407 U.S. 67, 80.

[21] See Brody II, 345 F.3d 103, 112 n.2 ("While the Village argues that Stanley Perelman, a representative of the developer, testified in his deposition that he told Brody that the approvals were in place and that the 30-day appeal period had begun to run, this at most creates an issue of disputed fact, as Brody has unequivocally denied knowledge of the existence of the determination and findings or the appeal period.").

14

the 30-day challenge period affecting his particular rights.[22] See Tioronda, LLC v. New York, 386 F. Supp. 2d 342, 354 n.12 (S.D.N.Y. 2005) ("[A]lthough Defendants may have given Plaintiff a pamphlet outlining, in general terms, the Special Procedure (as well as other indications that its property might be taken), there is nothing to indicate that Defendants gave notice of its actual, final decision to take Plaintiff's property by the Special Procedure."); cf. Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 800 (U.S. 1983) ("a mortgagee's knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending."); Mullane, 339 U.S. 306, 318 ("sending [beneficiaries] a copy of the [relevant] statute months and perhaps years in advance" does not substitute for personal notice).[23]

Additionally, Brody notes that notice of one type of proceeding does not constitute notice of a different, but related, proceeding. See SEC v. Sekhri, 2006 U.S. Dist. LEXIS 53668, at *5 (S.D.N.Y. 2006) (given Defendant's layman status, notice of filing of criminal insider trading charges does not constitute notice of companion SEC civil proceeding).

Defendants do not argue that Brody's involvement in the environmental review process, in and of itself, establishes "actual notice" of the 30-day period to challenge the taking of his property. Rather, Defendants argue that Brody (and his counsel's) involvement in the environmental review process provided "actual knowledge" of the eminent domain procedures, and therefore, after Brody's conversation with Perelman, "actual notice" of the 30-day period to challenge the taking of his property.

Brody is correct in that his (and his counsel's) involvement in the environmental review process does not, in and of itself, establish "actual notice" of the commencement

---

[22] Brody also argues that misleading information, such as the erroneous information provided in the Village's SDEIS that an EDPL challenge is brought pursuant to Article 78, cannot constitute "actual knowledge." See, e.g., Brown v. Tucker Professional Assoc's, 229 S.E.2d 541 (Ga. App. 1976) (in context of bankruptcy statute, where defendant told plaintiff's partner that he had filed for bankruptcy when defendant had, in fact, not filed, "[m]isleading information… is not calculated to afford a creditor equal opportunity with other creditors to participate in the estate, and is not 'actual knowledge' of the proceedings.").

However, Brody's cited caselaw generally addresses situations where the notice itself was factually misleading. Here, even though the EDPL information provided by the Village was legally misleading, Brody is nevertheless charged with knowledge of the property laws. It is unclear, on the record before me now, what the import of the erroneous EDPL information is on Brody's "actual knowledge" or "actual notice" of the EDPL proceedings.

[23] But see Buzinski v. Brown, 6 Vet. App. 360, discussed in note 15, supra.

15

of the 30-day challenge period, pursuant to the Second Circuit's directives on remand. To the extent that Brody's (and his counsel's) involvement in the environmental review process informs Brody's "actual knowledge" and "actual notice" of the commencement of the 30-day challenge period, however, those factual issues will be considered at trial.

## IV.   CONCLUSION

Because genuine issues of material fact remain as to whether Brody received "actual notice," Brody's motion for partial summary judgment on his procedural due process claim is denied. Trial of the issue will commence on March 19, 2007.

The Clerk of the Court is directed to close this motion and remove it from my docket.

**SO ORDERED.**
**March 12, 2007**
**New York, New York**

U.S.D.J.

16